MOTOR QUEEN MOTEL *v.* CONNIE SANDLIN

5-6232                           492 S.W. 2d 257

Opinion delivered April 2, 1973

*Lewis & Mitchell,* by: *Michael Rothman,* for appellant.

*Ben J. Harrison,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case in which the employer, Motor Queen Motel, appeals from a judgment of the Garland County Circuit Court affirming an order by the Workmen's Compensation Commission in favor of the claimant-appellee Mrs. Connie Sandlin. Mrs. Sandlin was awarded 31 weeks temporary total disability, 35 weeks permanent partial disability, and $1,105.12 for medical expenses incurred because of an injury she sustained to the inside portion of her left ankle when she accidently struck it on an iron stairway while in the course of her employment for the motel.

For reversal the appellant-motel first contends that there was not sufficient evidence to sustain the Commission's finding that appellee's injury arose out of, and occurred within the course of, her employment by the appellant. The appellee testified that on Sunday evening, May 10, 1970, while she was employed as desk clerk at the motel, she went some distance from her office in showing a room to some customers and as she was hurrying back to her desk, she accidently struck the inside portion of her left ankle on a wrought iron stairway at the motel. She said the injury broke the skin on her ankle and resulted in some bleeding; that she reported the injury to her employer that night and showed him the injury she sustained. She said it was necessary to seek medical attention for the injury the following day.

Mr. Lester E. Houston, the manager and part owner of the motel, testified that Mrs. Sandlin reported her injury to him but that she did not report it on the night of May 10. Dr. Onyx P. Garner reported on June 1, 1971, that he saw Mrs. Sandlin in his office on May 13, 1970, "after striking her ankle on an iron railing the night before." So, *we conclude that there was substantial evidence* to sustain the Commission's finding that on May 10, 1970, Mrs. Sandlin sustained an injury growing out of, and occurring within, the course of her employment by the appellant-motel.

The appellant next contends that the appellee failed to prove that her alleged injury contributed to, was causually connected with, or in any way aggravated, her pre-existing condition of varicose veins. The claim was not based upon aggravation, nor did the referee find that the injury aggravated a pre-existing condition of varicose veins. It could easily be assumed. however, that Mrs. Sandlin's pre-existing condition of varicose veins and phlebothrombosis might well have prolonged or aggravated the healing process to her injured ankle but the aggravation is really not a point in issue.

Dr. Garner's report of June 1 is as follows:

"Mrs. Connie Sandlin was seen in my office on May 13, 1970, after striking her left ankle on an iron railing the night before. She has varicosities of the left leg with moderate phlebothrombosis. The ankle was ulcerated at site of injury. Treatment consisted of dressings and medication. Bed rest was advised.

On August 11, 1970, this patient was advised that she needed hospitalization and a graft to the affected ankle, in order to try to remedy the situation. I have not seen her since. .

Diagnosis: Varicose ulcer, small."

On May 18, 1971, Dr. Vernon E. Sammons reported that he saw Mrs. Sandlin on August 12, 1970, with an ulcer over the medial aspect of the left lower leg just

above the medial malleolus. He said that Mrs. Sandlin stated the ulcer had been there for about five months and that she had had some vein trouble in the past with thrombophlebitis of the deep system. He said that she had had recurrence of this ulcer on several occasions. Dr. Sammons then said that on August 16 he excised the ulcer with stripping of the long saphenous vein with the interruption of several deep communicating veins beneath the ulcer site and did a graft on the defect where the ulcer was excised. He said that because of long periods of lack of activity she had suffered some shortening of the achilles tendon. Mrs. Sandlin was referred by Dr. Sammons to Drs. Durham and Murray for evaluation. On May 20, 1971, Dr. Murray reported as follows:

> "This patient was seen on October 2, 1970, in the office. She related that she had injured her left ankle, was originally treated by Dr. Garner and, at a later date, a skin graft and vein stripping was carried out by Doctor Sammons. The patient stated that she remained with pain, induration and swelling of the foot.

> Examination at that time revealed 10 degree loss of motion of the ankle in all planes. There was also noted a moderate amount of swelling in both the foot and leg.

> AP and lateral x-rays of the left ankle revealed no evidence of osseous injury, but there was noted a marked amount of osteoporosis suggestive of Sudeck's dystrophy.

> The patient was asked to secure support shoes, increase her walking and return in one month. The patient has not been seen and failed to return."

On July 16, 1971, Dr. Murray reported as follows:

> "Following our report to you of May 20, 1971, the above named patient was seen in our office on one occasion, July 6, 1971. At that time, she stated that she was attempting to work, but continued to have pain, swelling and disability in the left leg.

Examination at that time revealed that her gait on level ground was good. There remained some dependent edema in the left lower leg with continued pain around the area of the previous skin graft. There was also a 10 degree loss of motion in all planes of the left ankle.

AP and lateral x-rays of the left ankle revealed that the marked osteoporosis had cleared up.

The patient was discharged at that time with a 10% permanent disability of the leg below the knee as a result of the injury of 1970.''

The appellant next contends that appellee failed to prove that she was entitled to a 20% permanent disability to her leg as awarded by the Commission, when her physician found only 10% permanent disability to the leg below the knee. We agree with the appellant on this point. The evidence is to the effect that Mrs. Sandlin was suffering with varicosities and thrombophlebitis attended by poor blood circulation in her lower extremities; that as a result of the injury to her ankle an ulcer formed which required skin graft, all of which resulted in a shortening of the achilles tendon and some loss of motion of the ankle joint. The full Commission on review simply affirmed the finding of the referee, and the referee found that Mrs. Sandlin sustained a compensable injury which arose out of and in the course of her employment; that as a result of the injury she paid out the sum of $1,105.12 in medical bills; that she was temporarily totally disabled for a period of 31 weeks and had sustained a permanent partial disability to her leg in the amount of 20%.

The injury alleged and proven in this case was a scheduled injury under Ark. Stat. Ann. § 81-1313 (c) (Repl. 1960) and is controlled by our opinion in *Anchor Const. Co.* v. *Rice*, 252 Ark. 460, 479 S.W. 2d 573. The appellee argues that the disability estimated by Dr. Murray in the amount of 10% below the knee was undisputed and we agree with this contention; however, the appellee further argues, that the Commission sustained the referee's award of 20% permanent disability to the leg on the basis of ap-

pellee's testimony as to her age, her work experience and training, and to her lower wages since the injury, and as to her inability to do the same work she did before the injury without assistance. We agree with the appellee that such seems to be the situation in the case at bar, however, that was exactly the situation in *Anchor Const. Co.* v. *Rice, supra,* and in that case we said:

> "We now come to the issue of whether the Commission in fixing partial loss or partial loss of use of a limb under schedule (c) can consider a wage earning loss in addition to the functional loss. We hold that they cannot."

In *Anchor* the attending physician had testified that the claimant-appellee had sustained a 15% functional disability to the left lower extremity. The Commission awarded him a 25% disability to the left lower extremity and in support of our statement as above set out we quoted with approval from Larson, Workmen's Compensation § 58.10 in part as follows:

> " 'The typical schedule provides that, after the injury has become stabilized and its permanent effects can be appraised, benefits described in terms of regular weekly benefits for specified numbers of weeks shall be paid. . . . These payments are not dependent on actual wage loss. Evidence that claimant has had actual earnings, or has even been regularly employed at greater earnings than before, is completely immaterial.' "

In *Anchor* we then said:

> "Since the Commission obviously used the wage earning loss to arrive at an award in excess of 15% to the left lower extremity below the hip, it follows that the Commission erred in entering an award in excess of the 15% functional loss."

We had an entirely different situation in the case of *Royal Shoe Mfg.* v. *Armstrong,* 252 Ark. 1002, 481 S.W. 2d 737. While in *Armstrong* the initial injury consisted of a cut to a finger, it developed into a chronic disorder

characterized by spasm of the blood vessels diagnosed as "causalgia," and resulted, among other symptoms, in bursitis of the shoulder joint, "frozen shoulder," and severe pain radiating into the neck and head. The condition was only responsive to temporary relief by blocking the stellate ganglion in the neck by injection. The functional disability was related to the body as a whole by medical evidence and we approved an award of permanent disability to the body as a whole.

In the case at bar there is no evidence, medical or otherwise, that Mrs. Sandlin's scheduled injury resulted in more than loss in the use of her leg below the knee caused by the stiffening of the ankle joint and shortening of the achilles tendon, and there is no medical or other evidence that her permanent disability resulting from the injury amounted to more than the 10% to the leg below the knee as estimated by Dr. Murray.

The judgment as to the temporary total disability and medical expenses is affirmed and the judgment as to the permanent partial disability is reversed and this cause remanded to the circuit court with instructions to remand to the Commission for the entry of award based on 10% permanent partial disability to the leg below the knee, and for reaward of attorney's fee based on amount involved.

Affirmed in part, reversed in part and remanded.